IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

**FILED**

**05/28/2024**

**U.S. DISTRICT COURT**
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

Trey Blaine #202387
Name/Number       Plaintiff(s),

2:24-cv-209-MPB-MKK

## EMERGENCY FILING FOR PRELIMINARY INJUNCTION

v.

Indiana Department of Corrections
Christina Reagle
Tricia Pretorius
Major Durregar
Carmen Babb
Heather Russell

    Defendants,

### PARTIES

1. **Plaintiff, Trey Blaine #202387**, is a citizen of the State of Indiana, and is located at the **Putnamville Correctional Facility**, 1946 West US Hwy 40, Greencastle, IN 46135.

2. **Defendant Tricia Pretorius,** in her individual capacity, is the Warden for the Indiana Department of Corrections and is located at Putnamville Correctional Facility, 1946 West US Hwy 40, Greencastle, IN 46135.

3. **Defendant Durregar,** in his individual capacity, is a Major for the Indiana Department of Corrections and is located at Putnamville Correctional Facility, 1946 West US Hwy 40, Greencastle, IN 46135.

4. **Defendant Christina Reagle**, in her individual capacity, is the commissioner for the Indiana Department of Corrections and is a citizen of the State of Indiana and is located at 302 West Washington Street (Room E334), Indianapolis, IN 46204.

5. **Defendant Carmen Babb**, in her individual capacity, is the regional finance director for the Indiana Department of Corrections and is a citizen of the State of Indiana and is located at 302 West Washington Street (Room E334), Indianapolis, IN 46204.

6. **Defendant Heather Russell,** in her individual capacity, is the Americans with Disabilities Association (ADA) Coordinator for the Indiana Department of Corrections and is located at Putnamville Correctional Facility, 1946 West US Hwy 40, Greencastle, IN 46135.

### Introduction

This is a Civil Rights action filed by ___Trey Blaine #202387___, a State prisoner, confined at the **Putnamville Correctional Facility**, for damages and injunctive relief under **42 U.S.C. § 1983**, alleging Inhumane, malicious and sadistic conditions of confinement in direct violation of the Cruel and Unusual standards set forth by the **Eighth, Eleventh** and **Fourteenth Amendment** of the **Constitution of the United States of America**.

### Jurisdiction

The court has jurisdiction over the plaintiff's claims of violation of Federal Constitutional Rights under **42 U.S.C §§ 1331(1)** and **1343**.

The court has supplemental jurisdiction over the plaintiff's state law tort claims under **28 U.S.C. § 1367**.

I am suing under state law. The citizenship of the plaintiff is different from the state citizenship of every defendant.

### Exhaustion of Administrative Remedies

The Plaintiff(s) has completely exhausted all of the available administrative remedies with respect to all defendant(s). **THERE ARE NO AVAILABLE REMEDIES AT THE PUTNAMVILLE CORRECTIONAL FACILITY.**

- **Ross v. Blake, 578 U.S. 632, 643, 136 S. Ct. 1850, 195 L. Ed. 2d 117 (2016)** ("[A]n administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.")

- **Ross v. Blake, 578 U.S. 632, 644, 136 S. Ct. 1850, 195 L. Ed. 2d 117 (2016)** ("When prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.")

- **Kaba v. Stepp, 458 F.3d 678, 684 (7th Circuit 2006)** ("[W]hen prison officials prevent inmates from using the administrative process. . . the process that exists on paper becomes "Unavailable" in reality.")

- Citing: ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the "Due Process Clause." **Owens v. Hinsley, 635 F.3d 950, 953-54 (7th Circuit 2011) (Citing George v. Smith, 507 F.3d 605, 609 (7th Circuit 2007)).** The upshot is that inmates do not have to exhaust administrative remedies rendered unavailable by prison officials. **Dole v. Chandler, 438 F.3d 804, 809 (7th Circuit 2006)** ("Prison Officials may not take unfair advantage of the exhaustion requirement. . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting.")

- **Nunez v. Duncan, 591 F.3d 1217 (7th Circuit 2010)** ("Failure to exhaust may be excused if the prisoner followed the grievance process but prison officials caused the process to be incomplete.")

## Statement of Claim

The plaintiff(s) in this case would like to inform the court that the plaintiff(s) are incarcerated under inhumane living conditions and that this inhumane treatment directly jeopardizes the health, safety and security of not only the Inmates, but the staff of this institution as well. These conditions are disgraceful and done deliberately with malicious and sadistic intent.

The conditions of confinement at the **Putnamville Correctional Facility** have existed in an unconstitutional manner for over 30 years. The **18-North Dormitory** was designed to accommodate only 400 inmates and currently houses 480. The buildings at this facility were not designed with ANY air circulation system.

Grievances and Lawsuits are ineffective against the administration and the IDOC and the conditions of confinement are deplorable. Rabid dogs are treated more humanely than inmates.

The laws are established and precedents have been set. The **Indiana Department of Corrections** has determined through its actions over the years that it is "**above the laws of the land**" meaning they can do as they please with no consequences.

This lawsuit encompasses the state of the dilapidated and decrepit **Putnamville Correctional Facility**. This court will find all applicable law is attached to pursue this case to swift conclusion. Monetary damages are attached.

## LIGHTING

**The Lighting in the dormitories is on 24-hours per day. There is never a point in a 24-hour period where there isn't enough light to read a book in ANY part of the building.**

Violation of Policy **04-02-103 §IV (B) (1) Lighting**
Lighting:

- **560** Light Fixtures in the cubes per building (**1,120 light bulbs**)
- **168** Dayroom Fixtures per building (**336 Bulbs**)
- **160** Nightlight fixtures per building (**320 Bulbs (80 Watt Bulbs)**)
- **60** Bathroom fixtures per building (**120 Bulbs**)
- **30** Caseworker office fixtures per building (**60 Bulbs**)
- **48** fixtures for 100$^2$ foot officers' desk area per building (**96 Bulbs**)
- **90** useless light fixtures per building
- **24** OUTDOOR light fixtures that run during broad day light (because some idiot never heard of a photosensor) per building.
- **11.5** watts per **1,800 LUMEN** bulb equals **0.0115 kW** per hour (totaling **0.65 BTU'S** per minute, per bulb)
- **11.5 Watts x 1,120 Bulbs = 12.88 kW per hour (Per Building)**
- **Multiple 0.65 BTU's per minute x 1,120 Bulbs = 728 BTU's (Per Building)**
- **Multiply 728 BTU's x 60 Minutes = 43,680 BTU's per hour (Per Building)**
- **Multiply 43,680 BTU's x 24 Hours = 1,048,320 BTU's per day (Per Building)**

That is a total of **1,140** light fixtures per building.
**580 LIGHT FIXTURES THAT NEVER SHUT OFF.**

**Inmates require heavy eye coverings to sleep.**

The facility is replacing the antiquated fluorescent lighting system with a "High Intensity" Stark White, 1,800 Lumen, LED lighting system. The side effects of this lighting have been studied by the Food and Drug Administration and the MAYO Clinic. These are the Side-effects:

- Headaches/Migraines (Injury)
- Sleep Disruption (Injury)
- Psychological Damage (Injury)
- Memory Loss (Injury)
- Cognitive disruption (Injury)

Recorded limits on lights is 850 Lumens before damages for light intensity.

This falls under the "malicious and sadistic" standard and violates the Eighth Amendment of the Constitution of the United States under "Cruel and Unusual Punishment" and can be considered torture in a civil suit.

- **Keenan v. Hall, 83 F.3d at 1090** ("Moreover, '[t]here is no legitimate penological justification for requiring [inmates] to suffer physical and psychological harm by living in constant illumination. This practice is unconstitutional.")

- **Shepherd v. Ault, 928 F. Supp. 643, 647-48 (N.D. Iowa 1997)** ("holding allegation of cell illumination 24 hours a day by a 60-watt light bulb which prisoners were forbidden to cover, stated a constitutional claim in view of allegations that the lighting made sleep very difficult, that the imposition for 283 and then 550 nights of "lighting so far removed from natural conditions," supported an inference of psychological harm.")

- **Farmer v. Brennan, 511 U.S. 825, 834, 182 L.Ed.2d 811, 114 S.Ct 1970 (1994)** – ("It is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk. *id*. Additionally, "A fact finder may conclude that a prison officials knew of a substantial risk from the very fact that the risk was obvious."")

- **Daskalea v. D.C., 227 F.3d 433 (DC Circuit 2000)** ("Upholding award of **$350,000.00** in compensatory damages for mental and emotional distress, despite former prisoner's lack of permanent injury.")

- **Dixon v. Godinez, 114 F.3d 640 (7th Circuit 1997)** ("Prison conditions, even if not amounting to an Eighth Amendment violation, may violate the Eighth Amendment if persisting over extended periods of time.")

## FANS/HEATING/VENTILATION

Violation of Policy **04-02-103 §IV (A) (1) (b) Heating Shall not be Above 68°F**

Each Dormitory of this facility has approximately **117,000** cubic feet of volume appropriated for housing. Times four dorms per building, that equals **468,000** cubic feet of air.
According to federal law, the ventilation system of **EVERY FACILITY** must exchange the **ENTIRE** volume of **EACH** room, four times per an hour with **FRESH AIR**. This facility has **NO** operational ventilation system in the dorms.
The buildings are constructed out of crumbling cinderblock walls covered in a dark brown, fired-clay, brick façade which absorbs and holds thermal energy and radiates it throughout the night. They put a dark forest green roof on these buildings and the buildings absorb heat all day long and release heat all night long.

**Johnson Controls** disabled the thermostats in the dorms. There is no heat control. Once the heat gets turned on, each dorm becomes a blast furnace (**Temperatures Exceed 100°F in winter**) and the officers close and lock the illegal window grates.

Please refer to **Wheeler v. Zatecky**.

These Grates are illegal and against **Federal** and **State Fire Codes**.

**Should the court refer to Wheeler v. Zatecky, the staff at this facility will close and lock the window grates as punishment whenever they feel like it. In the process they leave the inmates in the completely sealed Dorm and retreat to the caseworker's office where there is an Air-Conditioner Unit that runs 24-Hours a day keeping the office at 65°F and a refrigerator. Then they can observe the chaos and suffering from the windows overlooking the dayroom floor.**
   **Officers are also supplied with a "Cooling Station" called a "VersaMist" manufactured by a company called Schaefer. This device is a fan mounted on top of a 20-gallon water tank. It pumps water into the fan to act as a stand-alone swamp cooler.**
   **Officers are also supplied with unlimited amounts of ice and cold drinks throughout their shifts. However, all officers state they hate it here and want to quit due to the heat. That is part of the staff retention problem here at the Putnamville Correctional Facility.**

The Bathrooms at this facility have no functional ventilation systems, **PERIOD**. Black mold grows in the bathrooms.

There is an insufficient amount of fans. Possession of the fans cause full on gang-style fights that cause injury.

This lack of ventilation causes the following:

- **Excessive and oppressive heat buildup (Exceeding 90° Daily by the Heat Index) (Injury)**
- **Smell buildup (Injury)**
- **Black Mold (Injury)**
- **Mildew (Injury)**
- **Bacterial Growth (Injury)**
- **Headaches (Injury)**
- **Dehydration (Injury)**
- **Cramps (Injury)**

- Heat Exhaustion (Injury)
- Heat Stroke (Injury)
- Discombobulation (Injury)
- Physical and Violent fights over Ice and Fans (Injury)

ALL Injuries Fall under the:
- **Americans with Disabilities Act (42 U.S.C. § 12132)**
- **Rehabilitation Act (29 U.S.C. § 706 (7) (b))**

  - Disability under the ADA – Expert Medical Testimony is not necessary to establish the existence of a disability.

  - The ADA amendment act defines major life activities as follows:

    (A) In general, for purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

    (B) Major bodily functions, for the purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

<u>**OPEN WINDOWS DO NOT QUALIFY AS VENTILATION!**
**There is a 10-20°F temperature difference between the outside and inside temperatures at this facility.**</u>

Example: **05/20/24 @ 1300 hrs. it was 84°F OUTSIDE (90°F INSIDE @ 57% Humidity = 100°F on the Heat Index)**
          **05/21/24 @ 0451 hrs. it was 69°F OUTSIDE (84°F INSIDE @ 52% Humidity = 86°F on the Heat Index)**
          **05/22/24 @ 0445 hrs. it was 70°F OUTSIDE (82°F INSIDE @ 56% Humidity = 84°F on the Heat Index)**

<u>**THE INSIDE TEMPERATURE IS CALCULATED USING THE HEAT INDEX. HUMIDITY IS INCLUDED IN THE CALCULATION.**</u>
This falls under the "malicious and sadistic" standard and violates the Eighth Amendment of the Constitution of the United States under "Cruel and Unusual Punishment" and can be considered torture in a civil suit.

- **Board v. Farnham, 394 F.3d 469, 486 (7th Circuit 2005)** ("Holding evidence that ventilation system was contaminated with fiberglass and mold supported Eighth Amendment Claim.")

- **Gates v. Cook, 376 F.3d 323, 339-40 (5th Circuit 2004)** ("Affirming finding of unconstitutional **HEAT** requiring provision of **FANS**, **ICE** water and daily showers when **HEAT INDEX** is **90°** or HIGHER.")

- **Dixson v. Godinez, 114 F.3d 640, 642-45 (7th Circuit 1997)** ("... [P]risoners have a right to protection from extreme cold"; cold alone may violate the Eighth Amendment.; "Severe Discomfort" can be unconstitutional without imminently threatening health.")

- **Henderson v. DeRobertis, 940 F.2d 1055, 1059 (7th Circuit 1997)** ("Constitutional Rights don't come and go with the weather.")

- **Henderson v. Sheahan, 196 F.3d 839, 846-47 (7th Circuit 1999)** ("The **Eighth Amendment** protects prisoners from an official's deliberate indifference to conditions posing an unreasonable risk of serious damage to the prisoners' **future health**.")

- **Hudson v. McHugh, 148 F.3d 859, 864 (7th Circuit 1998)** ("Inmate adequately stated a claim for deliberate indifference where he alleged defendants knew about a 'serious' problem and 'did nothing about it.'")

- **Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)** ("On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health and safety.")

- **Doe v. Purdue Univ., 928 F.3d 652, 664 (7th Circuit 2019)** ("Supervisory staff can be held liable for a Constitutional violation if they 'knew about the conduct and facilitate it, approve it, condone it or turn a blind eye.")

- **Duane v. Lane, 959 F.2d 673, 677 (7th Circuit 1992)** ("This total disregard for a prisoner's safety is the 'functional equivalent of wanting harm to come to the prisoner.'")

- **Townsend v. Fuchs, 522 F.3d 765, 773 (7th Circuit 2008)** ("Inmates are entitled to conditions of confinement that meet 'the minimal civilized measure of life's necessities.'")

- **Greeno v. Daley, 414 F.3d 645, 653 (7th Circuit 2005)** – ("Plaintiff is not required to establish that the officials "intended or desired the harm that transpired", but to instead show that they "knew of a substantial risk of harm… and disregarded it."")

- **Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321 (1991)** ("The Court reasoned that if deprivations are not specifically imposed as part of a prisoner's sentence, they are not really "punishment" unless the officials imposing them "possessed a sufficiently culpable state of mind." **Id., 501 U.S. at 297-298** ("The Court then decided that deliberate indifference was the appropriate state of mind requirement for conditions cases.")

- **Deshaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200, 109, S. Ct. 998, 103L.Ed.2d 249 (1989)** ("Due Process Clause of the Fourteenth Amendment 'When the state by affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs- e.g. food, clothing, shelter, medical care and reasonable safety- it transgresses the substantive limits on state action set by the due process clause.")

- **Wilson v. Seiter, 501 U.S. 294, 300, 111 S. Ct. 2321 (1991)** ("The long duration of a cruel prison condition may make it easier to establish knowledge.")

## **INMATE LIVING SPACE**

All facilities are given the standard for living space of **52 square feet** per EACH INMATE. To clarify, that is **52 square feet** of **FLOOR** space for **EACH INCARCERATED INDIVIDUAL**. The bed is **NOT** included.

Inmates at the Putnamville Correctional Facility are given approximately **42 square feet** to exist in, PERIOD.

Sometimes Two Incarcerated Individuals are required to share the **21 Square feet** of floor space, giving each inmate approximately **10.5 square feet** to store all of their property and cohabitate.

Technically, we are a **Medium Security Facility** that is maintained on **24-hour** controlled movement which qualifies as "Lock-Down".

Living Space is a dormitory **33'** wide. Minus **16.5** feet for bunk width. Leaving **16.5'** in living space for **5-10** people. Dormitory is **100'** long. Minus **25** feet for walkways and waist high walls. Leaving **75'** in living space for **60** people.
**100' – 25' x 16.5' ÷ 60 = 20.625' square feet** per Inmate. This falls **32' square feet** short of the **52 square feet** they are required to provide each inmate by law.

### **THIS IS AN "OVERCROWDING" CONDITION**

There is not enough staff to safely operate this institution to capacity. The staff that are employed at this facility are inexperienced and some are downright reckless and dangerous and endanger the "**Safety and Security**" of the inmates in their care.

**This falls under the "malicious and sadistic" standard and violates the Eighth Amendment of the Constitution of the United States under "Cruel and Unusual Punishment" and can be considered torture in a civil suit.**

- **Hendrix v. Faulkner, 525 F. Supp.. 435, 523, 525-27 (N.D. Indiana 1983)** ("37-square-foot cells, 17-square feet of floor space, 23-hour lock-in"), aff'd in pertinent part *sub nom.* **Wellman v. Faulkner, 715 F.2d 269, 274 (7th Circuit 1983)**

- **Gregory v. City of Rogers, Ark., 974 F.2d 1006, 1010 (8th Circuit 1992)** ("Thus, 'the Due Process Clause' imposes a duty on 'state actors' to protect or care for citizens. . . in custodial and other settings in which the state has limited the individual's ability to care for themselves.")

## **EXCESSIVE NOISE**

There is an on-site firing range that causes a constant psychological battering on the Inmate population of this facility. Some of the inmates at this facility have severe **Post-Traumatic Stress Disorder (PTSD)** and the sound of the state funded **"FIRE at will!"** competitions is traumatizing.

There are several active rock quarries in the area which actively blast four times per day causing the buildings to shake and the noise exceeds that of a .45 Caliber round.

Quiet inmates are required to be housed with obnoxious and noisy inmates who fight, have sex, scream, yell, talk over each other, rap, sing, make beats on hard surfaces, scream at sports events, horseplay and make noise just for the sake of making noise.

This noise encompasses this facility 24-hours a day.

Inmates require **INDUSTRIAL** ear plugs to sleep.

- **Antonelli v. Sheahan, 81 F.3d 1422, 1433 (7th Circuit 1996)** ("Holding allegations that excessive noise "occurred every night, often all night, interrupting or preventing [Plaintiff's] sleep," Stated a constitutional claim."); **Benjamin v. Frasser, 161 F. Supp. 2d 151, 185 (S.D.N.Y. 2001)** ("To the extent that excessive noise contributes to 'difficulty sleeping properly' it affects 'Basic daily living requirements' and thus may constitute a deprivation of the minimal requirements for federal constitutional purposes.") ("Finding violations where diesel generators near housing areas caused noise levels in excess of 45 decibels and in some cases 70 decibels, 24 hours a day.")

- **Blake v. Hall, 668 F.2d 52, 57-58 (1st Circuit 1981)** ("We see no reason why well behaved inmates should have to suffer "Cruel and Unusual" punishment because of the activities of some disruptive ones. . . [t]he prisons administration must bear the ultimate responsibility for cell block conditions.")

- **Smith v. Peters, 631 F.3d 418, 421 (7th Circuit 2011)** ("The Eighth Amendment protects prisoners from an official's deliberate indifference to conditions posing an unreasonable risk of serious damage to the prisoner's **future health.**")

## UNSANITARY CONDITIONS

Due in no small part to the facility administration's staggering incompetence, the inmates of the **Putnamville Correctional Facility** suffer from a constant insect and rodent infestation. How hard is it to get an exterminator? Oh! That's right! We don't have a maintenance fund because **Carmen Babb** put the kybosh on "Preventative Maintenance". Good job.

How about proper cleaning supplies like ammonia, bleach, antibacterial sprays, dawn dish detergent, stainless steel cleaner? Nope.

We are currently experiencing a **MRSA** outbreak at the facility and we can't even clean properly.

We are constantly exposed the **Hepatitis A, Hepatitis C, HIV/AIDs, Covid-19, Colds**, and **flu**, a majority has to do with the disgusting living conditions and bad ventilation of this disgusting facility and the lack of proper cleaning supplies.

- **Thomas v. Illinois, 697 F.3d 612, 614 (7th Circuit 2012)** ("The Eighth Amendment protects prisoners from an official's deliberate indifference to conditions posing an unreasonable risk of serious damage to the prisoner's **future health**.")

- **Vinning-El v. Long, 482 F.3d 923, 924-25 (7th Circuit 2007)** ("Holding jury could infer that guards working in the area knew about grossly filthy cell conditions.")

**Example:**
The conditions of the DRHU facility at Putnamville Correctional Facility are beyond reprehensible.

- **Johnson v. Pelker, 891 F.2d 136 (7th Circuit 1989)** ("Three days in a feces smeared cell without running water and no access to cleaning materials could violate the Eighth Amendment.")

- **Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Circuit 1996)** ("Sleeping on the floor for one night did not violate the Constitution.")

- **Townsend v. Fuchs, 522 F.3d 765, 774 (7th Circuit 2008)** ("Wet and Moldy mattress was actionable under the Eighth Amendment.")

**The DRHU facility has no sinks that fully function and absolutely NO HOT WATER in ANY cell.**

- **Wilson v. Seiter, 501 U.S. 294, 304, 111 S. Ct. 2321 (1991)** ("Holding that placement in a concrete cell with no heat, deprivation of clothing, mattress, blankets or any other bedding, prescription glasses, out-of-cell exercise, utensils, adequate ventilation or **HOT WATER**, and allowance of only minimal amounts of toilet paper, in combination, were "A significant departure from the 'healthy habitative environment' the state is required to provide its inmates.")

**The DRHU facility has no functioning ventilation system. If there is, it has been intentionally shut off. Temperatures EXCEED 100°F INSIDE individual cells EVERY day in the summer.**

- **Wilson v. Seiter, 501 U.S. 294, 304, 111 S. Ct. 2321 (1991)** ("Holding that placement in a concrete cell with no heat, deprivation of clothing, mattress, blankets or any other bedding, prescription glasses, out-of-cell exercise, utensils, adequate **VENTILATION** or hot water, and allowance of only minimal amounts of toilet paper, in combination, were "A significant departure from the 'healthy habitative environment' the state is required to provide its inmates.")

**The DRHU facility is not only disgusting and the staff are less than deplorable but the general atmosphere is one of negligence for the purpose of extreme punishment.**

- **Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321 (1991)** ("The Court reasoned that if deprivations are not specifically imposed as part of a prisoner's sentence, they are not really "punishment" unless the officials imposing them "possessed a sufficiently culpable state of mind." **Id., 501 U.S. at 297-298** ("The Court then decided that deliberate indifference was the appropriate state of mind requirement for conditions cases.")

**The "Administrative Restrictive Housing Unit" is in even worse condition than the "DRHU" facility. "ARHU" is commonly referred to as "The Dungeon" and makes very literal HELL look like a happy place to vacation.**
Cells in "**ARHU**" are **6.5' W x 7' L = 49 square feet** with only **28 square feet** of living space. Disgraceful. Temperatures over **100°F** daily from **May** to **September**.

## STRUCTURAL FAILURE IMMINENT

Considering that these buildings have been here **30 years** and according to the records that have been kept by the **Putnam County Assessor's Office** there have been more than **31,320 DETONATIONS** in that time.

The buildings were not only designed, but also built by the lowest bidder, using the cheapest materials and **EVERY SINGLE** corner that could be cut, was.

After 30 years of abuse, the physical structure of the buildings are beginning to fail. The floors vibrate heavily and have lateral cracks throughout.

The walls are beginning to separate from the corner foundation's structural supports and there are lateral and vertical cracks in the walls and some idiot put the crappiest electrical system available in the structures. There have been multiple electrical fires in the buildings.

**The last electrical fire was 04/18/24 in the 18-North Dormitory between 1815-1845**. There was **NO FIRE ALARM**. It failed completely. The officer had no idea what to do. Inmates attempted to deploy the extinguisher and were told they would be charged and sent to the hole if they touched it. **Sgt. Barnes** deployed the extinguisher and the power went out on the whole complex.

The power failed twice on **05/20/24**. Once @ **1604** until **1645**. The second time @ **2040** until **2205**.

The plumbing is completely trash.

The tunnels under the facility are crumbling and as a result the sewage pipes are ruptured, water lines are leaking, and the steam lines that heat the facility are damaged. There are sink holes on the property and the 17/18 Dormitory is beginning to shift on its foundation causing structural damage.

- **Gates v. Cook, 376 F.3d at 337** ("It is absurd to suggest that the federal courts should subvert their judgement as to alleged Eighth Amendment violations to the ACA whenever it has the relevant standards. Additionally, the ACA's limited inspections are not to be [sic] binding as factual findings on the magistrate or on this court. While compliance with the ACA's standards may be a relevant consideration, it is not *per se* evidence of constitutionality.")

- **Kinslow v. Buss, 2005 U.S. District Court LEXIS 29769 (3:05-cv-00384-RM)** ("Conduct is **deliberately indifferent** when the official has acted in an **intentional** or **criminally** reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though they could have easily done so.")

- **Helling v. McKinney, 509 U.S. 25, 33, 113 S. Ct. 2475 (1993)** ("A remedy for unsafe conditions need not await a tragic event".) **Helling** concerned exposure to tobacco smoke; other examples cited by the court included exposure to infectious diseases, unsafe drinking water, exposed wiring, deficient firefighting methods and assault.

- **Bridges v. Dart, 950 F.3d 476 (7th Circuit 2020)** ("Whether a county or government agency can be held liable for damages because an injury was caused by a policy or custom is a determination that must take into account the totality of the circumstances of the case; to prove the existence of unwritten policy or custom, a plaintiff must show the practice is so pervasive and widespread that it is apparent to policymakers and thus amounts to a *de facto* policy.")

- **Palmigiano v. Garrahy, 639 F. Supp. 244, 249-54 (D.R.I. 1986)** ("Problems with safety, classification, idleness, food service, ventilation, plumbing, noise and medical care.")

- **Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002)** ("Deliberate indifference may be inferred from the fact that the risk of harm was obvious.")

- **Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)** ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")

- **Wilson v. Seiter, 501 U.S. 294** ("The grant of summary judgement to the prison officials on the inmates' claims of cruel and unusual punishment was vacated, and the case was remanded.")

- **U.S. v. Classic, 313 U.S. 299, 326, 61 S. Ct. 1031 85 L. Ed. 1368 (1941)** ("A person acts under the **color of state law** for the purposes of §1983 when the power misused is **"possessed by virtue of state law"** and made possible only because the wrongdoer is clothed with the authority of state law.")

- **Anderson v. Creighton, 438 U.S. 635 (1987)** ("[T]he contours of the Right [at issue] must be sufficiently clear that a reasonable official would understand what he is doing violates that Right.")

- **Calhoun v. DeTella, 319 F.3d 936 (7th Circuit 2003)** ("Nominal damages are available for violations of Constitutional Rights.")

- **Procunier v. Martinez, 416 U.S. 396, 94 S. Ct. 1800, 40 L. Ed. 2d 224 (1974)** ("Prisoners are not stripped of Constitutional protections at the prison gates, retaining all those Rights an ordinary citizen enjoys, except those expressly taken by law, or by necessary implication not inconsistent with penal objectives.")

- **Anderson v. Creighton, 438 U.S. 635 (1987)** ("[T]he contours of the Right [at issue] must be sufficiently clear that a reasonable official would understand what he is doing violates that Right.")

- **Malley v. Briggs, 475 U.S. 335, 341 (1986); Mitchell v. Forsyth, 472 U.S. 511, 528 (1985)** ("Qualified immunity protects government officials unless "the law clearly proscribes their actions."")

- **Harris v. Fleming, 839 F.2d 1232, 1235 (7th Circuit 1988)**- (Detainees "Cannot expect the amenities, conveniences, and services of a good hotel.")

- **Smith v. Wade, 461 U.S. 30, 103 S. Ct. 1625, 75 L.Ed.2d 632 (1983)** ("Prison Guards may be held liable for punitive damages.")

- Citing "[I]ndividual liability under §1983 . . . requires personal involvement in the alleged deprivation." **Colbert v. City of Chicago, 851 F.3d 649, 657 (7th Circuit 2017)** and (**Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Circuit 1983**) ("Section **1983** creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a §1983 action unless he caused or participated in an alleged constitutional deprivation . . . A casual connection, or an affirmative link, between the misconduct complained of and the official being sued is necessary."))

- **Bojko v. PierreFabre USA, Inc. ,2023 U.S. District Court LEXIS 110443** – Federal Rule of Civil Procedure 12 (b)(1) standing is "an essential ingredient of subject matter jurisdiction." **Bazile v. Finance Sys. Of Green Bay, Inc., 983 F.3d 274, 278 (7th Circuit 2020)** "Standing requires that 'a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the conduct of the defendant(s), and (3) that it is likely to be redressed by a favorable

judicial decision." **Spokeo, Inc. v. Robins, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635(2016) (Citation omitted).** "The plaintiff as the party invoking federal jurisdiction, bears the burden of establishing these elements. Where, as here, a case is at the pleading stage, a plaintiff must clearly allege facts demonstrating each element."

- **Screws v. United States, 325 U.S. 91, 92-93, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945)** ("It is clear that under 'Color' of law means under pretense of law. Thus act of other officers in the ambit of their personal pursuits are plain excluded. Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it. If, as suggested, the statute was designed to embrace only action which the state has authorized, the words "Under color of state law" were hardly apt to express the idea.")

- **Discovery House v. Consolidated City of Indianapolis, 319 F.3d (7th Circuit 2003)** ("To correct a wrong, Federal Courts may use any available Remedy.")

- **Haley v. Gross, 86 F.3d 630, 641-42 (7th Circuit 1996)** ("Evidence that "Painted. . . a picture that would be apparent to any knowledgeable observer" supported an inference of knowledge on the Defendant's part.")

- Burns Indiana Code Annotated § 35-31.5-2-29 (Bodily Injury)
- Burns Indiana Code Annotated § 35-42-2-2 (Criminal Recklessness)
- Burns Indiana Code Annotated § 35-41-2-2 (a)(b)(c)(d) (Culpability)

**In Indiana, the elements of an intentional infliction of emotional distress claim are:** "(1) [The Defendant] engaged in extreme and outrageous conduct (2) which intentionally or recklessly (3) caused (4) severe emotional distress to another." **State v. Alvarez ex rel. Alvarez, 150 N.E.3d 206, 218 (Ind. Ct. App. 2020).** "The conduct must be particularly deplorable to meet the extreme and outrageous requirement." Id. As the Indiana Court of appeals explained, quoting from the restatement (second) of torts §46, for conduct to be extreme and outrageous, "[g]enerally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim, 'outrageous!'" Id.

**The Indiana Department of Corrections Deliberately compromises the Health, Safety and Security of those in their custody, those they employee, and their own institutions by pursuing unconstitutional "conditions of confinement". These conditions intentionally incite violence, racism, homosexuality, anti-Semitism, and cause severe psychological damage.**

**All listed defendants are responsible for the administration of this facility and should be held liable and responsible for all damages.**

Citing **Peak v. United States, 353 U.S. 43, 46, 77 S. Ct. 613, 1 L.Ed.2d 631 (1957)** ("Common sense often makes good law.")

## JURY DEMAND

Plaintiff wants a jury to hear his case.

## STATEMENT OF RELIEF

1. The conditions of the plaintiff(s) confinement at **Putnamville Correctional Facility** has deprived the **Plaintiff(s)** of life's most basic necessities by depriving them of the Right to be Free from retaliation for exercising the plaintiff(s) First Amendment Right to Freedom of Speech.

2. The conditions of the plaintiff's confinement at ISF has deprived the Plaintiff(s) of life's most basic necessities by depriving him of the Right to be Free from Cruel and Unusual Punishment under the Eighth Amendment.

3. As a direct and proximate result of the acts and omissions of all of the defendants, the Plaintiff(s) have suffered the following injuries and damages:

    (a) Violation of his Constitutional Rights under the First Amendment to the United States Constitution to be free from retaliation for exercising Free Speech Activities;
    (b) Violation of Their Constitutional Rights under the Eighth Amendment to the United States Constitution to be free of Cruel and Unusual Punishment;
    (c) Loss of Physical Liberty;
    (d) Mental and Emotional Anguish;
    (e) Irreparable harm; and
    (f) Additional financial losses, including costs associated with enforcing their Civil Rights pursuant to **§1983**, and the laws of the **State of Indiana**.

4. The acts and omissions of the defendants violated the following clearly established and well settled FEDERAL CONSTITUTIONAL RIGHTS of **ALL THE PLAINTIFF(s)**:

    (a) Freedom from punishment without a legitimate penological basis;
    (b) Freedom from Cruel and Unusual Punishment;
    (c) Freedom from Retaliation for exercising his freedom of Speech;
    (d) Freedom from not using the least restrictive means standard to achieve the same penological goal; and
    (e) Freedom from not being discriminated against.

5. At all times relevant, Defendants were acting "**Under the Color of Law**". Defendants acted maliciously, wantonly, willfully, and to benefit themselves personally and not within the scope of their employment.

## DAMAGES

**WHEREFORE**, the plaintiff respectfully prays this court to:
- Declare the Defendants actions and omissions unconstitutionally unlawful.
- Declare Judgement in the plaintiff's favor against the defendants.
- Order, upon proper motion, an immediate preliminary and permanent injunction requiring the defendants to not retaliate against the plaintiff.
- Order, upon proper motion, an immediate preliminary and permanent injunction requiring the defendants to permanently correct the conditions of confinement at the Putnamville Correctional Facility.
- Provide compensatory damages (where applicable) to the plaintiff of no less than **$250,000.00**.
- Provide punitive damages (where Applicable) of no less than **$25,000.00**.
- Provide nominal damages (where applicable) to the plaintiff in an amount determined by a jury.
- **All fees associated with this filing.**
- All other relief deemed just and proper in the premises.
- All future medical expenses from issues arising from consuming food and water provided by the **Indiana Department of Corrections**.
- Reparations for the intentional financial theft and blatant violation of the plaintiff's **First, Fifth, Eighth, Eleventh** and **Fourteenth Amendment Rights**.
- The **Plaintiff** requests that the Court request The **United States Department of Justice** to initiate an investigation into the criminal activities and enterprises within the **Indiana Department of Corrections**.
- The **Plaintiff** requests that the Court order The **United States Department of Justice** to initiate an investigation into embezzlement of government funds and to financially audit the **"Inmate Recreation Fund"** as well as the **"Veterans of Foreign Wars (VFW)"** and **"American Legion"** finances since this facility has a problem with financial embezzlement.

PERSUANT TO 28 U.S.C. §1746, I, _Trey Blaine 19#202387_, DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

_(signature)_

Signature
Putnamville Correctional Facility
1946 West US Hwy 40
Greencastle, IN 46135

**THE PLAINTIFF REQUESTS TO FILE WITHOUT PREPAYING THE FILING FEE**